| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO<br>City and County Building<br>1437 Bannock Street<br>Denver, CO 80202<br>Telephone: (720) 865-8301 | DATE FILED: February 14, 2013 9:30 AM<br>FILING ID: 62DE3550 |
| **Plaintiff:**     STACEY COHEN<br><br>**v.**<br><br>**Defendants:**   PUBLIC SERVICE COMPANY OF COLORADO, d/b/a XCEL ENERGY, | **▲ COURT USE ONLY ▲**<br><br>_____<br><br>Case Number:  12CV7720<br><br>Courtroom:  280 |
| **McNamara Roseman & Kazmierski, LLP**<br>Barry D. Roseman<br>1640 East 18th Avenue<br>Denver, Colorado 80218<br>(303) 333-8700<br>Fax: (303) 331-6967<br>E-mail: bdr@18thavelaw.com<br>Atty. Reg. #: 6067<br>**Attorneys for Plaintiffs** | |

| |
|---|
| **AMENDED COMPLAINT** |

**COMES NOW** the Plaintiff, by and through her attorneys, McNamara Roseman & Kazmierski LLP, and for an Amended Complaint against Defendant, states and alleges as follows:

## JURISDICTION AND VENUE

**1.**     This Court has jurisdiction over Plaintiff's claims of sex discrimination, hostile work environment and retaliation pursuant to 42 U.S.C. § 2000e-5(f)(3) and pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4).  This Court has jurisdiction over Plaintiff's claims of age discrimination, hostile work environment and retaliation pursuant to 29 U.S.C. §626(c)(1) and pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

**2.**     Venue herein is proper under 42 U.S.C. § 2000e-5(f)(3) and under 28 U.S.C. § 1391(b).  Plaintiff's claims arose within the State of Colorado.  Defendant may be found in the City and County of Denver, State of Colorado.  In addition, venue is proper in the City and County of Denver, State of Colorado, under C.R.C.P. 98(c)(1), since Defendant resides in that county.

-2-

## PARTIES

3.      Plaintiff is a female citizen of the United States.  Plaintiff was born on July 8, 1957.  At all times relevant hereto, Plaintiff has been at least forty (40) years of age.

4.      Defendant is a corporation organized and existing under the laws of the State of Colorado.  Defendant's principal place of business is located in the City and County of Denver, State of Colorado.  Defendant does business under the trade name of Xcel Energy.

5.      Defendant is an "employer" within the meaning of 42 U.S.C. § 12111(5)(A) and within the meaning of 42 U.S.C. § 2000e-(b).  At all times pertinent hereto, each Defendant engaged in an industry affecting commerce and had fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

6.      Defendant also is an "employer" within the meaning of 29 U.S.C. § 630(b).  At all times pertinent hereto, each Defendant engaged in an industry affecting commerce and had twenty (20) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

## JURISDICTIONAL REQUIREMENTS

7.      On or about September 27, 2007, July 25, 2008, May 1, 2009, June 18, 2010, April 13, 2011 and February 6, 2012, Plaintiff filed charges of sex discrimination, age discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") that satisfied the requirements of 42 U.S.C. § 2000e-5(b) and the requirements of 29 U.S.C. §626(d).  Each such charge was filed within three hundred (300) days after one or more of the alleged unlawful employment practices alleged herein had occurred.

8.      On or about September 26, 2012, the EEOC issued Dismissals and Notices of Rights in connection with Plaintiff's charges of employment discrimination and retaliation.  Plaintiff filed the Complaint in this case within ninety (90) days of the date on which she received each such Dismissal and Notice of Rights.

## FACTUAL ALLEGATIONS

9.      Plaintiff has been employed by Defendant since 1988.  During her employment for Defendant, Plaintiff has worked in jobs that traditionally have been performed by male employees.

### Complaints of Discrimination and Retaliation

10.      Prior to September 27, 2007, Plaintiff made a series of internal complaints, to fellow employees and management employees at Defendant and to representatives of her labor union, as a result of the statements and conduct of other employees of Defendant.  Those complaints included, but were not necessarily limited to, the following:

(a)      In 1991 or 1992, Plaintiff filed an internal complaint concerning a male employee who stated publicly that she was gay.  During that same period of time, Plaintiff contacted a union steward about another male employee's stalking and beating Plaintiff up at work.  Plaintiff obtained a restraining order against that second male employee after a manager employed by Defendant told Plaintiff that that employee "will do it again."  That second male employee violated the said restraining order, causing Plaintiff to enforce the restraining order against him.

-3-

**(b)** Prior to 1997, Plaintiff participated with other women who were employed by Defendant in non-traditional jobs in protests and in the presentation of evidence concerning the harassment she and her fellow female employees were receiving at work.

**(c)** Prior to 1997, Plaintiff filed an internal report with Defendant and then filed a grievance against a management employee, in which she complained that that management employee was attempting to turn other employees against her in retaliation for her complaints of sex and/or age discrimination.

**(d)** In or about April 2004, Plaintiff complained to her labor union after she was removed from Defendant's electrical apprenticeship program because of a threat of a grievance to remove her from that program. Plaintiff was reinstated in that apprenticeship program after a few days.

**(e)** During the said electrical apprenticeship program, Plaintiff complained internally to Defendant about the treatment that she received from trainers and other of Defendant's employees in that program, including but not limited to the fact that a trainer in the said electrical apprenticeship program accused plaintiff of being involved in a sex discrimination case against Defendant and that the said trainer was refusing to train her because of her alleged involvement in that lawsuit.

**(f)** Between April and September 2005, Plaintiff complained internally to management employees of Defendant that she was not being assigned to perform work that would have earned her overtime pay, that she needed to receive the practical training she would need in the said electrical apprenticeship program and that she was being treated differently and more harshly than male apprentices in that program.

**(g)** On or about April 1, 2005, Plaintiff complained internally to one or more management employees of Defendant about the allegations that a male trainer had made about her, about new retroactive safety rules and about being treated as the "wicked witch of the west."

**(h)** In approximately January 2007, Plaintiff complained to a union steward about Defendant's unequal treatment of her and about the fact that other employees referred to Plaintiff in a derogatory manner.

**(i)** In approximately December 2006 or January 2007, and again in March 2007, Plaintiff complained to Defendant's Electrical Functional Joint Apprenticeship Committee ("EFJAC") about the failure of Defendant's management to provide her with the hours that she needed for a six-month test in Defendant's electrical apprenticeship program.

**(j)** In approximately August 2007, Plaintiff submitted a written complaint to Defendant's Human Resources Department about the ongoing discrimination and retaliation that she was receiving as an employee of Defendant.

**(k)** On or about October 14, 2007, Plaintiff complained internally to Defendant's apprenticeship program, which included both management employees of Defendant and representatives of Plaintiff's labor union, about two reviews she had received from Functional Area Representatives.

**(l)** On or about May 13, 2008, Plaintiff complained internally to management employees of Defendant about the fact that she was not allowed to work in the field before she took the practical portion of a test in the said apprenticeship program.

-4-

**(m)**     On or about June 2, 2008, Plaintiff complained internally to management employees of Defendant that she had been told that a male trainer in the said electrical apprenticeship program had sabotaged a piece of equipment so that it would not function properly during a test that Plaintiff was scheduled to take, using that equipment.

**(n)**     On or about June 2, 2008, Plaintiff complained internally to management employees of Defendant that she was being subjected to a far more rigorous testing process than her male counterparts in the said electrical apprenticeship program.

**11.**     On or about September 27, 2007, Plaintiff filed the first of several complaints of sex discrimination, age discrimination and retaliation with the EEOC.

## Job Assignments

**12.**     During her employment by Defendant, and in particular after January 1, 2007, Defendant repeatedly assigned Plaintiff to perform menial tasks rather than tasks with a work crew and/or perform work that was more suitable to Plaintiff's level of skills and training.  Those assignments included, but were not necessarily limited to, the following:

**(a)**     In approximately 1997, Plaintiff and another female employee of Defendant frequently were assigned menial tasks at Defendant's Arvada Service Center, rather than working with a crew.

**(b)**     Repeatedly, including but not necessarily limited to approximately May or June 2010, when Plaintiff performed work as a utility worker in Street Lighting, she was given no assignments or was given purposefully wrong assignments and orders.

**(c)**     In approximately June 2010, when Plaintiff worked in Gas Emergency Response/Trouble trucks, male employees in that department refused to allow Plaintiff to work in that department.  As a result, Plaintiff was assigned to do nothing in that department for a week.

**(d)**     Repeatedly, including but not necessarily limited to prior to October 4, 2010, Defendant assigned Plaintiff to perform more menial and physically strenuous work than Plaintiff's male and/or younger counterparts were assigned to perform.

**(e)**     Repeatedly, including but not necessarily limited to prior to April 3, 2011, Defendant assigned Plaintiff menial work to perform, such as taking apart old gas piping, inventorying and shipping used gas meters, stocking materials, sweeping the floors and dumping the trash.

**13.**     Defendant repeatedly assigned Plaintiff to perform more menial work than it assigned to Plaintiff's male and/or younger counterparts.

## Training

**14.**     Defendant repeatedly failed to provide Plaintiff adequate training for the jobs she was assigned to do and in connection with Defendant's electrical apprenticeship program.  Defendant's failure to provide such training included, but was not necessarily limited to, the following:

**(a)**     Repeatedly, including but not necessarily limited to in approximately December 2004, February and March 2005, and December 2006 through May 2007, Defendant refused to provide training to Plaintiff that she needed.

-5-

**(b)**    On or about July 25. 2005, a trainer in the said electrical apprenticeship program required Plaintiff to do more difficult work at the same time as a male apprentice in the same program, and then gathered a group of co-workers around to watch Plaintiff and that male apprentice and to single Plaintiff out for ridicule.  That trainer and those co-workers did not comment on the work done by that male apprentice, even though that apprentice did not do that work properly.

**(c)**    On or about February 23, 2006, a trainer/supervisory employee in the said electrical apprenticeship program informed Plaintiff that Plaintiff would be required in the future to use a manual squeeze tool that had been outlawed by the company's safety committee and vowed to call in sick rather than to train Plaintiff.

**(d)**    In or after December 2006, a trainer/supervisory employee of Defendant complained about training Plaintiff and even having to work with her, stating that his was "a working man's truck."

**(e)**    Prior to November 2008, Defendant failed and refused to provide training to Plaintiff that would have enabled her to pass her apprenticeship examination.

**(f)**    Prior to April 3, 2011, Defendant repeatedly failed and refused to provide Plaintiff training opportunities.

15.    Defendant failed and refused to provide training to Plaintiff that was comparable to the training that it provided to other male and/or younger employees of Defendant.

### Hostile Work Environment

16.    Management and non-management employees of Defendant repeatedly have made disparaging comments to Plaintiff about her work, about their perceptions of her behavior and sexual orientation, about her perceived and actual prior complaints of discrimination and retaliation, and about other matters.  Those comments have included, but are not necessarily limited to, the following:

**(a)**    In approximately 1991 or 1992, a male employee made a statement to Plaintiff's work group that she was a lesbian because she had refused his sexual advances.  Another male employee physically assaulted and stalked Plaintiff.  Even though Plaintiff obtained a restraining order against that male employee, Defendant failed and refused to take any meaningful action to support Plaintiff and terminated the employment of other employees who supported Plaintiff's allegations.

**(b)**    On or about October 7, 2003, Plaintiff reported that a male employee was in his underwear, changing his pants, in a public area near the women's locker room at Defendant's Lipan Distribution Center.

**(c)**    In late July and/or early August 2004, an apprenticeship trainer told Plaintiff that no one wanted to train Plaintiff because she allegedly had won money in an earlier sex discrimination case against Defendant.

**(d)**    Between December 2006 and June 2007, another employee informed Plaintiff that if she "would have gone to Shebrew School instead of Hebrew School," she would have been a secretary as she "should have been."

**(e)** In approximately August 2007, a Functional Representative at Defendant's Material Distribution Center told Plaintiff that he was upset that Plaintiff had filed a discrimination complaint and warned Plaintiff that there are people in their department who "aren't forgiving."

**(f)** Prior to September 2007, Plaintiff found the word "transvestite," with an arrow pointing to Plaintiff's name, on a locker in the women's locker room at Defendant's Lipan Distribution Center.

**(g)** Prior to July 16, 2008, a trainer in Defendant's electrical apprenticeship program told Plaintiff how angry he was to have been called in by Defendant's Human Resources Department about Plaintiff's prior complaints of sex discrimination.

**(h)** During her participation in Defendant's electrical apprenticeship program:

**(i)** A male employee of Defendant accused Plaintiff of being the dyke who complained and got others in trouble at Defendant's Lipan Distribution Center. That same male employee, on at least one occasion, left work rather than work with Plaintiff.

**(ii)** A male trainer falsely alleged that Plaintiff had won money in a sex discrimination lawsuit against Defendant, was unreasonably angry at Plaintiff, did not train Plaintiff, made sure others did not train Plaintiff, limited Plaintiff's time and experience doing required work, trained Plaintiff incorrectly and interfered with Plaintiff's overtime and bonuses.

**(iii)** Those and other of Defendant's employees harassed other of Defendant's female employees in the same facilities in which Plaintiff received apprenticeship training because of those female employees' gender.

**(iv)** A male employee told Plaintiff that she did "a good job for a girl."

**(v)** A foreman at Defendant's Lipan Distribution Center called Plaintiff a prostitute.

**(vi)** An employee put Plaintiff on the phone for a telephone call with a male employee who was going to have a company-paid retirement party. That male employee told Plaintiff that she should not come to that party because everyone would leave. A male manager told Plaintiff that she should stay at the company's premises during that party and clean in the back room.

**(vii)** A male employee who was a trainer, supervisory employee and EFJAC member told Plaintiff that he was going to wash her out of the apprenticeship program and make sure she never got another good evaluation.

**(viii)** Plaintiff was discriminatorily told in several warehouses that cleaning, sweeping and meter inventory was work done by apprentices.

**(ix)** Plaintiff was evaluated by employees who were hostile to her in the break-out tests she received in the said apprenticeship program.

**(i)** After December 2008, a management employee told Plaintiff that nothing that she said or did in connection with her second break-out test or with the grievance on that test mattered. That same management employee told Plaintiff that the only thing that was important was what the journeymen wanted.

-7-

**(j)**    A male employee told Plaintiff that the Defendant was trying to find an employee who did not have a credibility problem to take her out, that Defendant was building a lot of discipline and that even a small complaint would get Plaintiff fired.

17.    The said comments that management and fellow employees made to Plaintiff were communicated to her because of her sex and/or her age.  Those comments about her and about other female employees were so severe and/or pervasive that they created a hostile work environment for Plaintiff.

## **Apprenticeship Program**

18.    Plaintiff worked as an apprentice in Defendant's electrical apprenticeship program between approximately April 2004 and December 2008.  Defendant discriminated against Plaintiff by treating her differently and more harshly than male and/or younger apprentices in that same electrical apprenticeship program.  That disparate treatment included, but was not necessarily limited to, the following:

**(a)**    After Plaintiff began her apprenticeship rotation at Defendant's Arvada Service Center, male co-workers of Plaintiff at that facility frequently stated that they hated Plaintiff and that they wanted her out of that apprenticeship program.

**(b)**    On or about July 18, 2007, Plaintiff requested that Defendant's EFJAC move her out of the Lipan Distribution Center, due to the hostile work environment she experienced at that facility, requested an assessment by a qualified assessor and requested that she be placed in a program with a timeline to fix the flaws in the training she had been receiving.  Defendant failed and refused to move Plaintiff out of the Lipan Distribution Center until October 2007, did not change the persons who assessed her progress and did not remedy the flaws in the training Plaintiff received or give Plaintiff the training she needed to pass a subjective test she needed to take in order to complete its electrical apprenticeship program  Defendant treated Plaintiff differently from a male line apprentice(whose work was also under Defendant's EFJAC) who requested that he be moved, and who was moved, after he complained that he had experienced a hostile work environment..

**(c)**    Prior to September 27, 2007, Defendant did not provide Plaintiff the number of hours that the apprenticeship program contract required that she receive in order to test meters, which was one of the duties that she was supposed to be performing as an electrical apprentice.

**(d)**    In approximately May 2008, a trainer in Plaintiff's apprenticeship program required Plaintiff to perform cleaning duties in the backroom of Defendant's Valentia Service Center as part of Plaintiff's apprenticeship training.  The male apprentices in that program, in Plaintiff's absence, were not required to perform those cleaning duties.

**(e)**    In May 2008, Plaintiff was removed from field work and was not allowed to return to that work before her apprenticeship examination in early June 2008, notwithstanding Plaintiff's requests that she be allowed to return to the field.  Defendant instead moved Plaintiff to a hostile work environment in the shop, rather than giving Plaintiff continuous field experience similar to the field experience that male apprentices received.  That field work would have provided Plaintiff with recent practical experience that would have assisted her in passing that practical apprenticeship examination.

**(f)**    On or about May 27, 2008, another apprenticeship program trainer gave Plaintiff two learning guides, one day before the practical part of her apprenticeship tests.

-8-

**(g)** Prior to November 2008, Defendant repeatedly failed and refused to provide Plaintiff adequate training that would have allowed her to pass the apprenticeship program's subjective field test.

**19.** Employees of Defendant discriminatorily and for retaliatory reasons failed and refused to give Plaintiff a passing grade in connection with the electrical apprentice program in which she was enrolled, despite the fact that Plaintiff had performed satisfactorily in those examinations.  As a result, Plaintiff's participation in that electric apprenticeship program was discontinued and Plaintiff was not allowed to graduate to or to attain the level of a journeyman, despite her demonstration of her competence to work at that level.

**20.** Defendant repeatedly treated Plaintiff less favorably in connection with its apprenticeship programs than the way it treated other male and/or younger employees.  Such disparate treatment included, but was not necessarily limited to, Defendant's failure to provide adequate training to Plaintiff, the job assignments it provided to Plaintiff as part of its electric apprenticeship program, the scores that its employees gave to Plaintiff in connection with the subjective practical portions of its apprenticeship program, its decision to discontinue Plaintiff's participation in that program, and its refusal to assign Plaintiff to any other apprenticeship program.

### Promotional and Apprenticeship Training Opportunities

**21.** Defendant treated Plaintiff differently and more harshly than the way it treated other male and/or younger employees with respect to opportunities for promotions or for participation in Defendant's apprenticeship programs.  That disparate treatment included, but was not necessarily limited to, the following:

**(a)** In or about May 2010, Defendant denied Plaintiff's request that she be promoted to an Apprentice Vaultman/Cableman position.

**(b)** In approximately August 2010, Defendant filled an electric substations relay department apprenticeship position without giving Plaintiff an opportunity to bid for that position.

**(c)** In or about January 2011, Defendant withdrew a metrology apprenticeship position after Plaintiff had applied for it.

**(d)** In or after November 2011, Defendant failed to post a Substation Relay Technician apprentice position after Plaintiff had expressed an interest in that position.

**(e)** In approximately December 2011, Defendant rejected Plaintiff's application for an Electric Meter Apprentice position in Eau Claire, Wisconsin.

### Overtime and Safety Issues

**22.** Defendant repeatedly failed and refused to provide Plaintiff overtime opportunities that were comparable to the overtime that it provided to its other male and/or younger employees.

**23.** Defendant's employees repeatedly provided Plaintiff trucks and other equipment that had significant safety problems and which created a risk that Plaintiff could have been injured or killed as a result of her use of that equipment.

### Discipline

**24.** Defendant repeatedly investigated Plaintiff for and/or accused Plaintiff of having committed acts for which it attempted to discipline her.  Those accusations and discipline included, but were not necessarily limited to, the following:

**(a)** On or about October 25, 2010, Defendant gave Plaintiff "coaching and counseling" after it falsely accused Plaintiff of having made disparaging comments about a male co-worker's weight.

**(b)** On or about November 29, 2010, Defendant gave Plaintiff "coaching and counseling" regarding her distribution of literature in the work place concerning gender bias in the trades.

**(c)** On or about February 18, 2011, Defendant placed Plaintiff on Decision-Making Leave based on false accusations that Plaintiff had been insubordinate and that she had touched a co-worker inappropriately.

**(d)** On or about March 18, 2011, Defendant investigated Plaintiff for allegedly stating that a co-employee "hates Jews," under the guise of scheduling a grievance hearing.

**(e)** Prior to February 6, 2012, Defendant investigated Plaintiff for allowing her truck to idle.

**(f)** Prior to February 6, 2012, Defendant falsely accused Plaintiff of parking her personal vehicle in two spaces and threatened her with towing her personal vehicle.

**(g)** Defendant investigated Plaintiff, threatened to discipline Plaintiff and disciplined Plaintiff for conduct that was similar if not identical to the conduct of male and/or younger co-employees who were not disciplined for having engaged in that conduct.

### FIRST CLAIM FOR RELIEF

For her First Claim for Relief against Defendant, Plaintiff adopts and incorporates by reference herein the allegations contained in Paragraphs Nos. 1 through 24 of this Amended Complaint, and further states and alleges as follows:

**25.** Defendant violated 42 U.S.C. § 2000e-2(a) by discriminating against Plaintiff because of her sex. As a direct and proximate result of such actions, Plaintiff has been, is, and in the future will be deprived of income in the form of wages and prospective retirement benefits and other benefits due her as an employee, in a sum to be proven at trial.

**26.** In addition, as a direct and proximate result of such actions, Plaintiff has suffered and continues to suffer severe emotional distress.

**27.** Further, Defendant engaged in the said discriminatory practice or practices with malice or with reckless indifference to Plaintiff's federally protected rights.  As a result, Plaintiff is entitled to recover, and should recover, punitive or exemplary damages from Defendant.

-10-

## SECOND CLAIM FOR RELIEF

For her Second Claim for Relief against Defendant, Plaintiff adopts and incorporates by reference herein the allegations contained in Paragraphs Nos. 1 through 27, inclusive, of this Amended Complaint, and further states and alleges as follows:

28.     Defendants violated 42 U.S.C. § 2000e-2(a) by creating and allowing Plaintiff to suffer a hostile work environment, as a result of her sex, as a result of the conduct and comments of Plaintiff's fellow employees and of Defendant's supervisory employees.  That conduct and those comments were unwelcome to Plaintiff.  That conduct and those comments were so serious and/or pervasive that they resulted in a hostile work environment for Plaintiff.

29.     In addition, as a direct and proximate result of such action, Plaintiff has suffered and continues to suffer severe emotional distress.

30.     Further, Defendant engaged in the said discriminatory practice or practices with malice or with reckless indifference to Plaintiff's federally protected rights.  As a result, Plaintiff is entitled to recover, and should recover, punitive or exemplary damages from Defendant.

## THIRD CLAIM FOR RELIEF

For her Third Claim for Relief against Defendant, Plaintiff adopts and incorporates by reference herein the allegations contained in Paragraphs Nos. 1 through 30 of this Amended Complaint, and further states and alleges as follows:

31.     Defendant violated 29 U.S.C. § 623(a) by discriminating against Plaintiff because of her age.

32.     As a direct and proximate result of such actions, Plaintiff has been, is, and in the future will be deprived of income in the form of wages and prospective retirement benefits and other benefits due her as an employee, in a sum to be proven at trial.

33.     Defendant willfully discriminated against Plaintiff because of her age.  As a result, Defendant is liable for liquidated damages to Plaintiff.

## FOURTH CLAIM FOR RELIEF

For her Fourth Claim for Relief against Defendant, Plaintiff adopts and incorporates by reference herein the allegations contained in Paragraphs Nos. 1 through 33 of this Amended Complaint, and further states and alleges as follows:

34.     Defendant violated 29 U.S.C. § 623(a) by creating and allowing Plaintiff to suffer a hostile work environment, as a result of her age, as a result of the conduct and comments of Plaintiff's fellow employees and of Defendant's supervisory employees.  That conduct and those comments were unwelcome to Plaintiff.  That conduct and those comments were so serious and/or pervasive that they resulted in a hostile work environment for Plaintiff.

35.     As a direct and proximate result of such actions, Plaintiff has been, is, and in the future will be deprived of income in the form of wages and prospective retirement benefits and other benefits due her as an employee, in a sum to be proven at trial.

36.     Defendant willfully discriminated against Plaintiff because of her age.  As a result, Defendant is liable for liquidated damages to Plaintiff.

## FIFTH CLAIM FOR RELIEF

For her Fifth Claim for Relief against Defendant, Plaintiff adopts and incorporates by reference herein the allegations contained in Paragraphs Nos. 1 through 36 of this Amended Complaint, and further states and alleges as follows:

**37.** Defendants violated 42 U.S.C. § 2000e-3(a) by unlawfully retaliating against Plaintiff because she opposed what she believed in good faith to have been sex discrimination and/or because she had filed charges of sex discrimination and retaliation with the EEOC. As a direct and proximate result of such actions, Plaintiff has been, is, and in the future will be deprived of income in the form of wages and prospective retirement benefits and other benefits due her as an employee, in a sum to be proven at trial.

**38.** In addition, as a direct and proximate result of such action, Plaintiff has suffered and continues to suffer severe emotional distress.

**39.** Further, Defendant engaged in the said retaliatory practice or practices with malice or with reckless indifference to Plaintiff's federally protected rights. As a result, Plaintiff is entitled to recover, and should recover, punitive or exemplary damages from Defendant.

## SIXTH CLAIM FOR RELIEF

For her Sixth Claim for Relief against Defendant, Plaintiff adopts and incorporates by reference herein the allegations contained in Paragraphs Nos. 1 through 39 of this Amended Complaint, and further states and alleges as follows:

**40.** Defendants violated 29 U. S. C. §623(d) by unlawfully retaliating against Plaintiff because she opposed what she believed in good faith to have been age discrimination and/or because she had filed charges of age discrimination and retaliation with the EEOC.

**41.** As a direct and proximate result of such actions, Plaintiff has been, is, and in the future will be deprived of income in the form of wages and prospective retirement benefits and other benefits due her as an employee, in a sum to be proven at trial.

**42.** Defendant willfully discriminated against Plaintiff because of her age. As a result, Defendant is liable for liquidated damages to Plaintiff.

**WHEREFORE,** Plaintiff respectfully prays that this Court:

**A.** Issue a declaratory judgment that the acts, policies, practices, and procedures of Defendants set forth in this Amended Complaint violated and continue to violate Plaintiff's rights under the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, and under the Age Discrimination in Employment Act, as amended, 29 U.S.C. §§ 621, *et seq.*;

**B.** Order Defendants to make Plaintiff whole providing appropriate back pay and reimbursement for lost pension and other benefits and expenses, in an amount to be shown at trial and paying Plaintiff the present value of her future lost earnings and future lost pension and other benefits and expenses, in an amount to be shown at trial;

**C.** Enter judgment in favor of Plaintiff and against Defendant for compensatory damages, in an amount to be shown at trial;

**D.** Enter judgment in favor of Plaintiff and against Defendant for punitive or exemplary damages, in an amount to be shown at trial;

-12-

**E.**      Enter judgment in favor of Plaintiff and against Defendant for liquidated damages, in an amount to be shown at trial;

**F.**      Grant to Plaintiff any attorney's fees she may incur, plus her costs, expert witness fees, disbursements, and pre - and post-judgment interest; and

**G.**      Grant such other and additional relief as may to this Court seem proper.

Respectfully submitted,

MCNAMARA ROSEMAN & KAZMIERSKI, LLP

s/Barry D. Roseman
BARRY D. ROSEMAN
1640 East 18th Avenue
Denver, Colorado 80203
Telephone: (303) 333-8700
FAX: (303) 331-6967
E-mail: bdr@18thavelaw.com

Address of Plaintiff:

1445 East 143rd Avenue
Brighton, CO 80602

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE HEREIN**