IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00578-WYD-BNB

STACY COHEN,

     Plaintiff,

v.

PUBLIC SERVICE COMPANY OF COLORADO, d/b/a Xcel Energy,

     Defendant.

---

**ORDER**

---

I.     <u>INTRODUCTION AND FACTUAL BACKGROUND</u>

THIS MATTER is before the Court on Defendant's Motion for Partial Summary

Judgment (ECF No. 97) filed January 17, 2014.  Specifically, Defendant Public Service

Company of Colorado ("PSCO") filed its motion for partial summary judgment on the

following grounds: (1) discrete acts of alleged sex or age discrimination claims that

occurred before December 1, 2006 are time-barred; (2) acts alleged as part of Plaintiff's

sex/age hostile work environment claims that are claimed to have occurred prior to the

time she entered the apprenticeship program are time-barred; (3) PSCO's removal of

Plaintiff from the meterman apprenticeship program in 2008 did not violate Title VII or

the ADEA; and (4) Plaintiff cannot establish any violation of the ADEA as a matter of

law.[1]  Based on my review of the pleadings and relevant record, the motion for partial

summary judgment is granted in part and denied in part.

---

[1] Thus, PSCO's motion for partial summary judgment does not impact Plaintiff's hostile work environment, disparate treatment, or retaliation claims under Title VII.

This case arises out of Plaintiff Stacy Cohen's ("Cohen") employment with PSCO as a Utility Worker and an apprentice in PSCO's Electrical Meter apprenticeship program. Cohen's Second Amended Complaint alleges that she filed seven charges of employment discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC").

By way of background, in or around 1988, Cohen was hired by PSCO and worked at its Cherokee Power Plant until 1997 when she became a Utility Worker C at the Arvada Service Center. Cohen was later promoted to a Utility Worker B in the Utility Services Department.

Electric Meterman Apprenticeship

In April 2004, Cohen became an electric meterman apprentice in PSCO's Electric Meter Department.[2] The apprenticeship program is a four-year program broken down into 8 six-month periods, with the apprentice receiving monthly evaluations in six categories for his or her performance during each month by the meterman who worked with the apprentice that month.[3] The Amended Apprenticeship Contract provides that "[t]he first time [an apprentice] fail[s] to meet the basic requirements of the apprenticeship, [he or she] will be issued the first strike ... for three months. The second time [the apprentice] fail[s] to meet the basic requirements of the apprenticeship it will

_____

[2] Electric metermen install, connect, inspect, and maintain electric meters at PSCO's customers' property.

[3] While there is a dispute as to whether the document proffered by PSCO is the Apprenticeship Contract, Cohen admits that she signed an Apprenticeship Contract and that the amended contract, amended in 2005, governed Cohen's apprenticeship from 2005 forward.

result in a second strike ... for six months. ...  The third time [the apprentice] fail[s] to

meet the basic requirements of the apprenticeship, it will indicate to the FJAC that [the

apprentice] should not be allowed to continue in the program."  (ECF No. 97-4).

During the apprenticeship, the apprentice is required to complete numerous

learning guides.  Each learning guide contains multiple steps and covers a specific skill

the apprentice must master to work as a meterman.  The Amended Apprenticeship

Contract provides that an apprentice must achieve a "[m]inimum of 100% proficiency on

all learning Guide/OJT Tests" and a "[m]inimum of 80% proficiency on all portions of

related and formal written tests."  (ECF No. 97-4).  During the relevant time period,

Chuck DeCino was the meterman who conducted all of Cohen's practical field tests.

Mike Cordova and Leroy Ramos also assisted with Cohen's breakout tests.  Mike King

also tested Cohen in the field while Tim Losier tested Cohen in the shop.

Positive Performance During Apprenticeship

Between July 2004 and December 2006, Cohen received a below-step rating in

one category of one of her Monthly Apprentice Reviews and received 191 at-step or

above-step ratings.  On April 11, 2006, with the written support from several PSCO

metermen who were involved in her training and testing, Cohen requested that she be

advanced from the 5th to the 6th stage in the eight-step, four-year apprenticeship.

(ECF No. 112-21).  For example, Jay Smith, a supervisor in Field Metering, stated that

"[Cohen] has shown a willingness to learn and the ability to quickly and accurately

complete all tasks to which she has been assigned.  Her concern for safety is first and

foremost, which is further demonstrated in her exemplary safety record."  (ECF NO.

112-21).  Electric Meterman Rodolfo Trujillo stated that "[Cohen] will become a very good meterman and is a highly qualified candidate for advancement."  (ECF No. 112-21).  Meterman Chuck Decino stated that Cohen "has completed all the related training books and tests early with consistent high scores, she has done consistently well in formal training and testing, and demonstrates the understanding and application of theory well, out in the field."  (ECF No. 112-21).  On May 31, 2006, PSCO granted Cohen's request for special advancement.

Cohen received passing scores on each practical test that she took prior to her first breakout test.  Cohen received a score of 99.3% on the written portion of her first breakout test.

Complaints by Cohen

On or about January 12, 2007, Cohen left a voicemail for PSCO President Patricia Vincent and reported an incident where Charles Izzo yelled at her about how she placed a ladder and that he claimed Cohen called him a liar.  Cohen further reported that Izzo threatened to give her low apprentice marks and Electrical Functional Joint Apprenticeship Committee ("EFJAC") problems for refuting Izzo's claim that she called him a liar.  Cohen also reported Izzo's conduct to Dave Lampson, an acting foreman at the Arvada Service Center; Mary Mapes, a PSCO Senior Workforce Relations Consultant; Jay Smith, a PSCO management employee; and Mr. Estrada, a chief foreman.

On January 14, 2007, Cohen disagreed with her Monthly Apprentice Performance Review for December 2006, in part, because Izzo had accused her of

calling him a liar and, in part, because he accused her of arguing and threatened to

mark her down to "0" or "1" on her evaluation and make her go in front of the EFJAC.

(ECF No. 112-23).

Between August 2007 and February 2009, while she was a part of the

apprenticeship program, Cohen submitted 10 internal and external complaints and

charges of employment discrimination and retaliation.

Negative Performance During Apprenticeship

The EFJAC issued Cohen strikes for receiving below-step marks in three or more

months in several categories of her Monthly Apprentice Reviews.  Specifically, (1) on

June 21, 2007, the EFJAC issued Cohen a strike for three below-step marks in

"Teamwork"; (2) on August 23, 2007, the EFJAC issued Cohen a second strike for three

below-step marks in "Performance Method"; (3) on October 18, 2007, the EFJAC issued

Cohen a third strike for three below-step marks in "Quality of Work"; (4) on January 31,

2008, the EFJAC issued Cohen a second strike – since two earlier strikes had been

overturned on appeal – for six below-step marks in "Team Work"; (5) on January 31,

2008, the EFJAC issued Cohen a strike for five below-step marks in "Performance"; and

(6) on February 25, 2008, the EFJAC issued Cohen a fourth strike for four below-step

marks in "Quality of Work."  Cohen appealed all of her strikes to the EFJAC, and the

EFJAC denied each of those appeals.  While the parties disagree as to the facts

regarding the appeals, it is clear that on five separate occasions, the Systems

Supervisory Joint Apprenticeship Committee ("SSJAC") granted Cohen's appeals from

the EFJAC's decisions to uphold the strikes.

Eventually, Cohen was removed from the apprenticeship program.  On or about February 2009, in accordance with the union contract, Cohen was returned to a Utility Worker C position.  One year later, Cohen was returned to a Utility Worker B position and is currently employed in this position.

Discipline and Corrective Actions

On July 10, 2008, Cohen was issued an Oral Reminder after an investigation by PSCO and the Union's Human Rights Committee determined that Cohen intentionally gave false information to a fellow employee about comments purportedly made by another employee.  On October 22, 2010, Cohen was issued a non-disciplinary Coaching & Counseling for violation of PSCO's Code of Conduct and its Discrimination, Harassment and Other Unacceptable Behaviors policy for making disparaging comments to a co-worker about his weight.  In November 2010, PSCO issued Cohen another non-disciplinary Coaching & Counseling for unauthorized use of company resources and distribution of flyers about gender bias.

In February 2011, PSCO issued Cohen a Decision Making Leave for insubordination and for a separate violation of the Code of Conduct and Harassment, Discrimination and Other unacceptable Behaviors policy.  While the parties dispute the facts surrounding this incident, it is clear that Cohen would not attend an investigatory meeting with PSCO management about a complaint lodged against her without a specific union steward present.  Also in February 2011, Cohen's co-worker, John Bruno, alleged that Cohen subjected him to sexual harassment.  Plaintiff grieved the Decision Making Leave, and the Union brought the matter to arbitration.  An arbitrator later ruled

that PSCO's "insistence that Cohen attend the January 18, 2011, investigatory interview

absent her chosen ... steward Verwys, despite his availability to promptly respond to the

meeting and represent Cohen, violated Cohen's fundamental due process rights

inherent in the proper cause provision of the parties' Agreement." (ECF No. 97-24).

Thus, the arbitrator ruled that the Decision Making Leave be expunged from Cohen's

records and replaced with a Written Reminder dated February 18, 2011, based solely

on the sustained charge of Cohen's inappropriate touching of Bruno. (ECF No. 97-24).

In April 2011, Cohen was issued a non-disciplinary Coaching & Counseling for

making a comment about how another meterman "hates jews." (ECF No. 97 at 21).

Charges of Discrimination

Between September 27, 2007 and December 5, 2012, Cohen filed seven

Charges of Discrimination with the Equal Employment Opportunity Commission

("EEOC"). For each separate charge, Cohen checked the boxes for "age", "retaliation",

and "sex" as the causes of the discrimination. (ECF No. 97-31). A PSCO employee,

Mr. Trujillo, testified that PSCO's investigations into Cohen's complaints were common

knowledge to the other employees in the Electrical Meter Department. Trujillo also

testified that he personally felt he was walking on eggshells around Cohen.

II.    STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may

grant summary judgment where "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and the . . . moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250,

106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Equal Employment Opportunity Comm'n. v.*

*Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  "When applying

this standard, the court must view the evidence and draw all reasonable inferences

therefrom in the light most favorable to the party opposing summary judgment." *Atlantic*

*Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000)

(internal quotation marks omitted).  All doubts must be resolved in favor of the existence

of triable issues of fact.  *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th

Cir. 1991).  A "genuine" factual dispute is one "on which the jury could reasonably find

for the plaintiff," and requires more than a mere scintilla of evidence.  *Liberty Lobby*, 477

U.S. at 252, 106 S.Ct. 2505.  A factual dispute is "material" only if it "might affect the

outcome of the suit under the governing law." *Id.* at 248, 106 S.Ct. 2505.

        The moving party bears the initial burden of showing that there are no genuine

issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548,

91 L.Ed.2d 265 (1986); *Justice v. Crown Cork & Seal Co.*, 527 F.3d 1080, 1085 (10th

Cir. 2008).  Once the moving party meets its burden, the burden shifts to the nonmoving

party to show that a genuine issue remains for trial with respect to the dispositive

matters for which he or she carries the burden of proof.  *Nat'l Am. Ins. Co. v. Am.*

*Re–Ins. Co.*, 358 F.3d 736, 739 (10th Cir. 2004); *see Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). As

to these matters, the nonmoving party may not rest on his or her pleadings but must set

forth specific facts.  Fed. R. Civ. P. 56(e)(2); *Matsushita*, 475 U.S. at 586–87, 106 S.Ct.

1348; *Justice*, 527 F.3d at 1085.

III.     DISCUSSION

A.     Whether Acts of Discrimination or Retaliation Occurring Before December 1, 2006 are Time-Barred

Under Title VII and the ADEA, claimants are required to file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice. *Annett v. Univ. of Kansas*, 371 F.3d 1233, 1238 (10th Cir. 2004). Here, Cohen's first charge of discrimination was filed on September 27, 2007. Thus, PSCO requests that I grant summary judgment on all claims of discrimination or retaliation that occurred before December 1, 2006. In her response, Cohen concedes this fact stating that she "will not be seeking damages for any discrete acts of discrimination or retaliation that occurred prior to December 1, 2006. Thus, I grant summary judgment in favor of PSCO as to any of Cohen's claims of discrimination or retaliation that occurred before December 1, 2006.[4]

B.     Whether Pre-Apprenticeship Acts Alleged as Part of Cohen's Hostile Work Environment Claim are Time-Barred

Cohen also brings a claim for hostile work environment. Given that any plaintiff alleging employment discrimination under Title VII must file administrative charges within the proscribed time period of the date of the alleged discriminatory act, PSCO moves the Court to grant summary judgment an all acts Cohen alleged as part of her

---

[4] This ruling does not, however, preclude Cohen from potentially using evidence of events that occurred prior to December 1, 2006 as background evidence for her timely discrimination and retaliation claims. Failing to exhaust administrative remedies does not "bar an employee from using the prior acts as background evidence in support of a timely claim." *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

hostile work environment claim that occurred prior to Cohen entering the meterman apprenticeship program on April 19, 2004.  Cohen filed her first Charge of Discrimination on or about September 28, 2007, more than three years after she entered the apprenticeship program.  Recognizing binding authority, in her response to the pending motion for partial summary judgment, Cohen concedes that she "will not seek to recover damages for any events that this Court determines not to be part of the same hostile work environment that [Cohen] experienced during and after the time that she was in [PSCO's] Electrical Meter apprenticeship program."  (ECF No. 112 at 44-45).

As noted above, while Title VII does not bar a plaintiff from using prior acts as background evidence in support of a timely claim, the Supreme Court reasoned that "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice."  *Id.* at 117.  Thus, acts from outside the limitations period can contribute to the hostile work environment and be considered when determining liability.  *Id.*  I find that there is a difference between actionable events and admissible evidence.  A time-barred discrete act is not actionable and cannot be a basis for liability, but it can be considered as evidence.  Thus, I grant summary judgment in favor of PSCO to the extent that Cohen is prohibited from seeking damages for events that are not part of the same hostile work environment that Cohen experienced during her apprenticeship.  However, because there are genuine issues of fact, resolution of the particular acts that Cohen may appropriately raise at trial as evidence of her hostile work environment claim is inappropriate at this stage of the litigation, but may be raised at trial.

C.   Whether Summary Judgment is Proper on Cohen's Claims of Discrimination and Retaliation in Connection with her Removal from the Apprenticeship Program

Cohen claims that PSCO subjected her to sex and age discrimination, and retaliation by removing her from the meterman apprenticeship program.

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against employees and applicants for employment on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). "The ADEA states that it is unlawful for an employer 'to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . .'" *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000) (quoting 29 U.S.C. § 623(a)(1)). To state a valid claim under Title VII or the ADEA, a plaintiff must prove by a preponderance of the evidence that the employer engaged in intentional discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). A plaintiff alleging discrimination on the basis of sex or age may prove intentional discrimination through either direct evidence of discrimination (e.g. oral or written statements on the part of a defendant showing a discriminatory motivation) or indirect (i.e. circumstantial) evidence of discrimination. *See Daniels v. United Parcel Service, Inc.*, 701 F.3d 620, 627 (10th Cir. 2012). When a plaintiff does not have direct evidence of discrimination, a plaintiff may rely on indirect evidence by invoking the analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.*

In *McDonnell Douglas*, the Supreme Court "established an allocation of the

burden of production and an order for the presentation of proof in Title VII

discriminatory-treatment cases." *Hicks*, 509 U.S. at 504. When the *McDonnell Douglas*

analysis is utilized, the burden of production shifts from plaintiff to defendant and back

to plaintiff. *McDonnell Douglas*, 411 U.S. at 802. If a plaintiff establishes a prima facie

case, then the burden of production shifts to the defendant to present evidence that it

had a legitimate nondiscriminatory reason for its action. *Id.* at 802-03. If the defendant

meets its burden of production, the plaintiff must then demonstrate that the defendant's

proffered explanation is pretextual. *Id.* at 804. Evidence of pretext, plus the

establishment of a prima facie case, is sufficient to avoid summary judgment, and

plaintiff is not required to present direct evidence of an illegal discriminatory motive.

*Reynolds v. School Dist. No. 1*, 69 F.3d 1523 (10th Cir. 1995).

Here, for purposes of the motion for partial summary judgment, PSCO assumes

that Cohen can establish a prima facie case of discrimination and retaliation under Title

VII and the ADEA with regard to her removal from the apprenticeship program. (ECF

No. 97 at 27). Thus, I turn the second step of the *McDonnell Douglas* analysis. The

burden now shifts to PSCO to articulate a legitimate, nondiscriminatory reason for its

decision to remove Cohen from the apprenticeship program. *See McDonnell Douglas*,

411 U.S. at 802. Here, PSCO contends that based on performance problems, Cohen

had three strikes issued against her. Therefore, under the Amended Apprenticeship

Contract, Cohen was removed from the program. I find that this is a nondiscriminatory

reason, therefore, the burden shifts to Cohen to show that the proffered reason is

merely a pretext for discrimination. *Id.*

Generally, a plaintiff shows pretext in one of three ways: (1) with evidence that the defendant's stated reasons for the adverse employment action were false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff. *Plotke v. White*, 405 F.3d 1092, 1102-03 (10th Cir. 2005) (internal citations omitted).  A plaintiff's evidence can also allow for an inference that the "'employer's proffered non-discriminatory reasons [were] either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext).'" *Id.* (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).  Evidence of pretext may also include the use, by the employer, of subjective criteria in its employment decision. *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217-18 (10th Cir. 2002) (internal citations omitted).

PSCO maintains that Cohen was removed from the apprenticeship program based on poor performance.  However, Cohen received strong performance ratings prior to January 2007 when she began making complaints about acts of discrimination and retaliation against her.  After January 2007, Cohen's ratings in her Monthly Apprentice Reviews sharply decreased.  For example, Cohen received one below-step mark prior to making any complaints and 23 below-step marks after she began making complaints of discriminatory and retaliatory conduct.  Additionally, the SSJAC granted Cohen's appeals from five of the pre-breakout test strikes.  There is also evidence that

PSCO did not follow the SSJAC's recommendation that Cohen be assigned on a

rotational basis to the Southwest and Southeast Service Centers and that Cohen be

assigned to work with Mr. Urban as her trainer for the remainder of her apprenticeship

training.  Instead, Cohen was assigned to other locations and worked with other

trainers.  Following her reassignment to other locations and other trainers, Cohen's

Monthly Apprentice Reviews declined.  Moreover, there is evidence that after Cohen

complained about discrimination, several PSCO employees did not want to work with

Cohen or viewed her in a negative light.  Viewing this evidence in a light most favorable

to Cohen, I find that PSCO's proffered non-discriminatory reasons are pretextual due to

weaknesses, inconsistencies, and contradictions.  Accordingly, Cohen's discrimination

and retaliation claims survive summary judgment.

> D.     Cohen's ADEA Claims

>> 1.     Whether Cohen Properly Exhausted Her ADEA Claims

PSCO next asserts that Cohen did not properly exhaust her ADEA claims with

the EEOC.  Both Title VII and the ADEA require a plaintiff to exhaust his or her

administrative remedies by filing a charge of discrimination with the EEOC before filing

suit in federal court.  *See Shikles v. Sprint/United Management Co.*, 426 F.3d 1304,

1317 (10th Cir. 2005); 42 U.S.C. § 2000e5.  The Tenth Circuit has held that exhaustion

of administrative remedies is a jurisdictional prerequisite to suit under Title VII and the

ADEA.  *Id.*

PSCO contends that although Cohen began every one of her Charges of

Discrimination with a specific statement that PSCO "continues to engage in a patten

and practice of discrimination against female employees, *and against older female employees in particular,* with respect to hiring, pay, promotions, job assignments, training, discipline, demotions, terminations/constructive discharge, sexual harassment/hostile treatment, and other less favorable terms and conditions of employment," Cohen failed to assert specific facts to support the charge of age discrimination.  (ECF No. 97 at 29) (emphasis in original).  I disagree.  The Tenth Circuit has instructed that "in an effort to effectuate the ADEA's stated purpose of prohibiting arbitrary age discrimination in employment, ... we liberally construe charges of age discrimination filed with the EEOC."  *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1195 (10th Cir. 2004).  Here, while Cohen did not specifically use the language "age discrimination" in every EEOC charge, she checked the boxes, "Sex," "Retaliation," and "Age" as the basis of PSCO's discrimination against her.  Cohen also used the heading "Sex/Age Discrimination" in each of her EEOC charges.  Furthermore, each charge alleged that PSCO discriminated against "older female employees in particular, with respect to hiring, pay, promotions, job assignments, training, discipline, demotions, terminations/constructive discharges, sexual harassment/hostile treatment, and other less favorable terms and conditions of employment."  (ECF No. 97-31).  Given Tenth Circuit law directing the liberal construction of Cohen's EEOC charges, I find that Cohen properly exhausted her ADEA claims such that PSCO was put on notice regarding the nature of her age discrimination charges.

      2.    <u>Whether Summary Judgment is Proper on Cohen's ADEA Claims</u>

A claim of age discrimination or retaliation under the ADEA can be proven by

either direct or circumstantial evidence.  *Id.*  "'A plaintiff proves discrimination through

direct evidence by establishing proof of an existing policy which itself constitutes

discrimination.'"  *Id.* (quoting *Ingels v. Thiokol Corp.*, 42 F.3d 616, 620 (10th Cir. 1994)).

"In all other cases, the plaintiff seeks to prove discrimination through circumstantial

evidence."  *Howard v. Garage Door Corp. Inc.*, No. 02-3163, 2005 WL 481564 at *2

(10th Cir. 2005) (citing *Danville v. Regional Lab. Corp.*, 292 F.3d 1246, 1249 (10th Cir.

2002)).

      "Such a claim can survive summary judgment only where the plaintiff has

presented sufficient evidence to show there is a genuine issue of material fact

pertaining to whether the plaintiff's age actually motivated the allegedly discriminatory

conduct."  *Id.* (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141

(2000)).  "In determining whether the circumstantial evidence presented by the plaintiff

in a given case is sufficient to establish a genuine issue of material fact, the Supreme

Court has directed the application of the burden-shifting framework established in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 36 L.ED.2d

668 (1973)."  *Id.*

      Here, since Cohen offered circumstantial evidence of age discrimination, I again

follow the *McDonnell Douglas* burden-shifting framework.  *Id.*  I find that Cohen

proffered evidence that she was treated differently in connection with overtime pay and

the disciplinary or corrective actions that she received along with being subjected to

age-based comments.  I also find that PSCO articulated legitimate, nondiscriminatory

reasons for its actions.  However, consistent with my findings earlier in this Order,

considering the totalilty of the evidence in the light most favorable to Cohen, I find that there are genuine issues of fact as to whether PSCO's actions were pretext for age discrimination or retaliation.

IV.     CONCLUSION

Based upon the foregoing, it is

ORDERED that Defendant's Motion for Partial Summary Judgment (ECF No. 97) is **GRANTED IN PART AND DENIED IN PART.** The motion is granted to the extent that summary judgment is entered in favor of PSCO as to any of Cohen's claims of discrimination or retaliation that occurred before December 1, 2006 as set forth in this Order. Additionally, summary judgment is entered in favor of PSCO to the extent that Cohen is prohibited from seeking damages for events that are not part of the same hostile work environment that Cohen experienced during her apprenticeship as set forth in this Order. The motion is denied in all other respects.

Dated:  July 18, 2014

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge