IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00578-WYD-NYW

STACEY COHEN,

      Plaintiff,

v.

PUBLIC SERVICE COMPANY OF COLORADO, d/b/a Xcel Energy,

      Defendant.

---

## ORDER

---

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on Defendant's Motion for Partial Summary Judgment (ECF No. 192) filed March 27, 2015.[1]  This is an employment discrimination and retaliation lawsuit.  As I detailed in my previous order, dated July 18, 2014, Plaintiff Stacey Cohen ("Plaintiff" or "Cohen") was employed by Public Service Company of Colorado ("PSCO" or "Xcel") as a Utility Worker and an apprentice in PSCO's Electrical Meter apprenticeship program.  In or around 1988, Cohen was hired by PSCO and worked at its Cherokee Power Plant until 1997 when she became a Utility Worker C at the Arvada Service Center.  Cohen was later promoted to a Utility Worker B in the Utility Services Department.  In December 2012, Cohen filed this lawsuit against PSCO,

---

[1] I note that this is Defendant's second such motion.  On July 18, 2014, I granted in part and denied in part Defendant's first Partial Motion for Summary Judgment.  (ECF No. 149).  Specifically, I denied the motion as to Plaintiff's discrimination and retaliation claims based on gender and age except for any of Plaintiff's claims of discrimination or retaliation that occurred before December 1, 2006.   That Order is incorporated by reference herein.

alleging various violations of Title VII and the ADEA.[2]  Cohen continued working at

PSCO until taking early retirement at the end of June, 2014.  Subsequent to my July 18,

2014 ruling, Cohen amended her Complaint to allege a claim of constructive discharge

based on the circumstances surrounding her early retirement.  Defendant moves for

partial summary judgment on Cohen's newly asserted claim of constructive discharge.

II.   RELEVANT FACTS

       As of December 5, 2012, Cohen was employed by PSCO as a Utility Worker B

assigned to Street Lighting.  On April 4, 2013, Cohen called in sick because her primary

care physician, Dr. Goldsmith "took her off work for two weeks" after seeing her in his

office.  (Resp. at 5).  Dr. Goldsmith testified that Cohen told him that she did not feel

comfortable or safe in her working environment at PSCO.  He also recalled Cohen

reporting that "the situation was becoming so stressful that she was really becoming

emotionally incapacitated by the events at work and could not function there," and that

she "was really becoming so distraught emotionally – sleep deprivation, nightmares,

depression – that she couldn't function" and "did not feel safe there."  (Resp. at 6).

While Cohen hoped she would only be absent from work for a few weeks, her condition

did not improve to the point where she could return to work at PSCO.

       Marilee Boe, a psychotherapist, also treated Cohen.  Boe saw Cohen 65 times

from April 29, 2013 to June 17, 2014.  Boe believed that Cohen had been too

traumatized from working at PSCO to be able to return to work there.  Boe believed that

---

[2] Cohen initially filed this lawsuit in Colorado state court, but on March 6, 2013, PSCO timely removed the matter to this Court.  (*See* Not. of Removal, ECF No. 1).

Cohen was struggling so severely with the symptoms of PTSD that it was not healthy for Cohen to be at work. Nick Kaplan, another psychotherapist who treated Cohen, testified that it would be extremely difficult for Cohen to work in any capacity, "considering her lack of sleep and her mental state of being ...." (Resp. at 7).

On January 3, 2014, Cohen filed her eighth Charge of Discrimination, alleging that PSCO had subjected her to a hostile work environment that caused her "to become ill and to become unable to perform [her] work duties, which caused [her] to go on sick leave, beginning in April 2013." (Mot. at 5). Cohen remained on paid sick leave until May 8, 2014, when she exhausted her sick leave benefit. At that time, PSCO placed Cohen on an unpaid leave status pending the outcome of her application for long-term disability benefits.[3] On June 3, 2014, Cohen's application for long-term disability benefits was denied as of October 31, 2013, because it was determined that her medical documentation did not support her claim for long-term disability after that date.

On June 12, 2014, PSCO sent Cohen a letter notifying her, among other things, that her unpaid leave status would expire June 30, 2014. The letter also informed Cohen that if she wanted to return to work, she needed her medical providers to "complete and submit a Report of Workability and, if she intended to request additional unpaid leave, her doctor should provide information that would allow PSCO to assess the reasonableness of providing such leave as an accommodation, including information regarding whether Plaintiff could return to work within six months and how long a

---

[3] On February 28, 2014, Cohen filed an application with the Hartford for long-term disability benefits.

requested leave would be." (Mot. at 6). The letter also stated that "if you do not either: (1) work with the Company in order to return to work or, (2) provide the requested medical information in order for the Company to effectively evaluate your request for additional unpaid leave, your employment with the Company may end effective July 1, 2014." (Mot. at 6-7). In response to the letter, Cohen submitted two notes from her medical providers, Marilee Boe and Dr. Goldsmith, stating that she would not be capable of returning to work in any capacity for at least six months. Boe wrote that "Stacey Cohen is not able to work for X-cel in any position, any shift, any capacity" and that there was "absolutely no way Stacey could return to work anywhere, in any capacity, in any occupation within six months." (ECF No. 194, Ex. I). Dr. Goldsmith wrote that Cohen is "unable to work in any capacity for at least 6 months due to the severity of her PTSD. She remains completely medically incapacitated. The duration of her disability is at least 6 to 12 months." (ECF No. 194, Ex. J). In response, PSCO informed Cohen's counsel that "it did not appear reasonable to extend [Cohen's] unpaid leave of absence beyond June 30, 2014 because she had been on leave for fourteen months, her doctors stated she could not work in any capacity for at least six months, there was no stated expectation that [Cohen] would be able to return to work at even a year's time and any return to work date was indefinite." (Mot. at 7) (internal quotation marks omitted). There is conflicting evidence as to whether PSCO's action in terminating Cohen's unpaid leave status was discriminatory or retaliatory.

On or around June 30, 2014, Cohen requested early retirement from PSCO. Cohen testified that since she would have lost her medical benefits if PSCO terminated

her employment, she decided to take early retirement, beginning on July 1, 2014, in

order to maintain her medical benefits.

On July 22, 2014, Cohen filed her ninth Charge of Discrimination, alleging both

sex/age discrimination and retaliation.  She stated that

> [b]eginning on April 4, 2013, I was on sick leave from my position as a
> utility worker.  I was not able to continue working in that or in any other
> position for the company due to the severe, persistent emotional distress I
> had suffered as a result of the hostile work environment I experienced
> while working for Xcel.  I was placed on unpaid leave status on or about
> May 8, 2014.
> ...
>
> In a letter dated June 12, 2014, Xcel informed me that I could remain on
> unpaid leave status after June 30, 2014 only if my health-care providers
> stated, among other things whether I would be able to return to work, with
> or without accommodations, during the next six months.  My health-care
> providers stated that I could not return to work for at least six months to a
> year.  Since Xcel told me that my employment would end on July 1, 2014,
> and since my involuntary dismissal would have had a devastating impact
> on my health insurance benefits, I had no reasonable choice but to take
> early retirement on June 30, 2014.  Xcel constructively discharged me
> from my employment by telling me that I would be fired on July 1, 2014.

(ECF No. 192, Ex. L).

III.   STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may

grant summary judgment where "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and the . . . moving party is entitled to judgment as a matter

of law."  Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250,

106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Equal Employment Opportunity Comm'n. v.*

*Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  "When applying this standard, the court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."  *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (internal quotation marks omitted).  All doubts must be resolved in favor of the existence of triable issues of fact.  *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).  A "genuine" factual dispute is one "on which the jury could reasonably find for the plaintiff," and requires more than a mere scintilla of evidence.  *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. 2505.  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  *Id.* at 248, 106 S.Ct. 2505.

The moving party bears the initial burden of showing that there are no genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Justice v. Crown Cork & Seal Co.*, 527 F.3d 1080, 1085 (10th Cir. 2008).  Once the moving party meets its burden, the burden shifts to the nonmoving party to show that a genuine issue remains for trial with respect to the dispositive matters for which he or she carries the burden of proof.  *Nat'l Am. Ins. Co. v. Am. Re–Ins. Co.*, 358 F.3d 736, 739 (10th Cir. 2004); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). As to these matters, the nonmoving party may not rest on his or her pleadings but must set forth specific facts.  Fed. R. Civ. P. 56(e)(2); *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. 1348; *Justice*, 527 F.3d at 1085.

IV.   DISCUSSION

In order to establish a claim for constructive discharge on the basis of discrimination or hostile work environment, a plaintiff must show that "the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign."   *Sanchez v. Denver Pub. Schools*, 164 F.3d 527, 534 (citing *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 344 (10th Cir. 1986)); *see also Pennsylvania State Police v. Suders*, 542 U.S. 129, 147, 124 S.Ct. 2342, 159 L.Ed. 2d 204 (2004).   "There is no mathematically precise test of what is intolerable."   *Hogue v. MQS Inspection, Inc.*, 875 F.Supp. 714, 723 (D.Colo. 1995). Courts must examine all of the circumstances, including: (1) frequency of the conduct; (2) severity; (3) whether it is physically threatening or humiliating; and (4) whether it unreasonably interferes with an employee's work performance.   *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed. 2d 295 (1993).   A plaintiff must show that discrimination or harassment made the job so unbearable that her only reasonable option was to resign.   *See Sanchez*, 164 F.3d at 534; *see also Sandoval v. City of Boulder*, 388 F.3d 1312, 1325 (10th Cir. 2004).   Furthermore, the standard for constructive discharge is objective, "an employee's subjective feelings or beliefs are not relevant in a constructive discharge claim."   *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 858 (10th Cir. 2000).

Defendant PSCO argues that Plaintiff Cohen cannot sustain a constructive discharge theory of liability under her discrimination or retaliation claims because she has not established that her working conditions were so intolerable that a reasonable

person would have resigned as of June 30, 2014, which was the date that Cohen elected to take early retirement.  I disagree.  Viewing the evidence in the light most favorable to Plaintiff Cohen, I find that she has demonstrated genuine issues of facts surrounding her constructive discharge claim.  More specifically, Cohen has presented evidence that she was suffering from extreme stress and mental and physical anguish as a direct result of the discrimination she suffered while working at PSCO.  Cohen was being treated by three medical providers who all agreed that she was both physically and mentally unable to return to work at PSCO as of June 2014.  I find that there is sufficient evidence to create a material issue of fact as to whether PSCO, by its alleged, illegal discriminatory acts made working conditions so difficult for Cohen that a reasonable person in her position would feel compelled to resign or take early retirement.  While PSCO disputes some or all of this evidence, I find that there are genuine issues of material fact as to same.  Accordingly, I find that summary judgment is not proper on Cohen's claim of constructive discharge.

V.      CONCLUSION

Based upon the foregoing, it is

ORDERED that Defendant's Motion for Partial Summary Judgment (ECF No. 192) is **DENIED.**

Dated:  December 3, 2015

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge